IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MATTHEW THOMPSON,

    Plaintiff,

vs.                              Case No. 4:14cv620-MW/CAS

CHRIS COLLETTE,
and SCOTT DUVALL,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pro se Plaintiff Matthew Thompson initiated this case in November 2014, ECF No. 1, and was granted in forma pauperis status in December 2014. Mr. Thompson's second amended complaint, ECF No. 16, was filed in April 2015. Service was carried out and Defendant Scott Duvall filed an Answer on November 20, 2015. Defendant Chris Collette waived service, ECF No. 34, and filed an Answer on March 14, 2016. ECF No. 36. A discovery period was established, ECF No. 32, and extended, ECF No. 37. Defendants filed a motion for summary judgment at the conclusion of discovery, ECF No. 46, and after being advised of his obligation to respond

to that motion, see ECF No. 48, Mr. Thompson filed his response in opposition to the summary judgment motion. ECF No. 51.

As an additional matter, Mr. Thompson argues that he has been denied discovery. See ECF No. 51 at 1. He was provided the opportunity to conduct discovery, ECF No. 32, but his discovery related motions were denied. See ECF Nos. 38-43, 47-48. Mr. Thompson has had a full and fair opportunity to conduct discovery. It has been well established that pro se litigants are not excused from complying with the Federal Rules of Civil Procedure. Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) (finding that "once a pro se IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."). The denial of motions to compel does not mean that Mr. Thompson was prevented from seeking relevant and proper discovery.

**Allegations of the Complaint**

Mr. Thompson's second amended complaint, ECF No. 16, is brought against Mr. Collette, the food service director at Liberty Correctional Institution, and Mr. Duvall, the assistant warden. Mr. Thompson asserts Eighth Amendment claims for withholding adequate nutrition and edible food to him, an indigent, elderly inmate held in a confinement cell. ECF

No. 16 at 6, 9.  He contends that between March 10, 2014, and May 12, 2014, he was served "confinement trays" with "smaller portions and more rotten food" than trays served to the general population.  *Id.*  Mr. Thompson alleged that Mr. Collette served those trays "with full knowledge" of Mr. Duvall.  Mr. Thompson said that he lost 15 pounds in 3 weeks, leading to a prescription for a 4,000 calorie regulated diet with calcium supplements on April 1, 2014.  *Id.* at 6-7.  He further complains of a 9 or 10 day delay[1] in receiving that diet, and alleges that he continued to receive rotten food and small portions, but with the addition of "a sandwich snack at every meal."  *Id.* at 7.  Mr. Thompson seeks judgment in his favor for the Eighth Amendment violations, as well as compensatory and punitive damages and costs.  *Id.* at 9.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

---

[1] Common sense suggests that a diet prescribed on April 1st could not start that same day as medical staff would have to communicate this information to the kitchen staff.  Thus, the diet change would not happen on April 1st but, at the earliest, the following day, April 2nd.  This amounts to a 9 day delay, not 10.  At any rate, the difference between 9 or 10 days is insignificant.

summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury).  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[3] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The relevant Rule 56(e) evidence**

Mr. Thompson's only evidence is his affidavit submitted with his response to summary judgment. ECF No. 51 at 5. Mr. Thompson declares that he "was deliberately 'slow-starved' while in confinement at Liberty Correctional Institution by the combined efforts of Assistant Warden Scott Duvall & Food Service Director Chris Collette," who Mr. Thompson declares "also deliberately withheld [his] medically prescribed" 4,000 calorie regulated diet for 10 days. ECF No. 51 at 5. Mr. Thompson states that he notified both Defendants of the "inferior food trays being served in confinement." Id. "However, neither acted to remedy the situation." Id. He further declares that Mr. Duvall and Mr. Collette were also aware that Mr. Thompson had "repeated weight loss events" that he suffered "during the 3½ years prior." Id. Mr. Thompson says that his "sudden, extreme weight loss was not a one-time-event, but actually the fourth extreme (20 plus pounds) forced slow-starvation that was used by the staff of 'bad actors' at Liberty CI to punish & harass" him and other "problem inmates." Id.

Mr. Thompson is 5 feet, 10 inches tall. ECF No. 46, Ex. A at 29 (ECF No. 46-1).[4] At the time of his deposition on March 23, 2016, he was 53 years of age. *Id.* at 1, 30. Mr. Thompson was housed in confinement between March 10, 2014, and May 12, 2014. *Id.* at 6. He was served three meals a day in confinement: breakfast, lunch, and supper. *Id.* at 7. He said that each meal tray served had four or five compartments and three out of the five compartments were edible. *Id.* at 14-15. The other two compartments on the trays were problematic and he would have to "pick out the rotten potato parts, pick out the foreign objects." *Id.* He said the foreign objects were pieces of wood and "rocks, because a lot of times they didn't clean the beans." *Id.* at 19. One time, a try had "a piece of scouring pad, piece of metal" on it. *Id.* He would remove the object and eat around it. *Id.* at 20.

Mr. Thompson lost 20 pounds "over the course of 15 days." *Id.* at 10. He testified in his deposition that when he was incarcerated in the Land O'Lakes Jail in Pasco County, he "lost 20 some odd pounds." Ex. A at 4.

---

[4] Because all exhibits submitted were included in Defendants' motion for summary judgment, ECF No. 46, they will be referenced by Exhibit number only. Additionally, for Exhibit A, which is portions of Plaintiff's deposition testimony, the page referenced is to the page number as provided on the docket, not the page number of the deposition transcript.

After tests revealed there was "nothing wrong with" him, he just has "a high metabolism," he was "provided a double portion tray." *Id.* He said that when he "came to DOC" he was "back up to 160-pounds, which is [his] normal weight." *Id.* He testified that his "weight would fluctuate." *Id.* at 5. His testimony establishes that he would lose weight, receive approval for the 4,000 calorie diet, which would cause his weight to go back up, and then the diet would be canceled. *Id.* at 4-5. He also said that after the 4,000 calorie diet was instituted on April 10, 2014, he "received what was supposed to be a 4,000 calorie diet" every day through the end of his confinement on May 12, 2014. *Id.* at 22. Mr. Thompson contends that the 4,000 calorie trays are "supposed to have larger portion size on certain food items," but the "only thing that made it different [at Liberty C.I. with Mr. Collette] was the sandwich." *Id.* He never had an "issue" in not being served "a peanut butter or cheese sandwich." *Id.*

Mr. Thompson contends that Mr. Collette, as the food service director, was "responsible for the food service" and "whatever comes out that kitchen is his responsibility ultimately." Ex. A at 23. Mr. Collette never physically served Mr. Thompson a meal and was never present when the meals were served. *Id.* Mr. Thompson also contends that Mr. Duvall is at

fault for not correcting "Mr. Collette's errors when he was notified." Ex. A at 25-26.

Defendants also submitted the affidavit of Mr. Maier in support of the summary judgment motion. Ex. B (ECF No. 46-2). He provided a current Body Mass Index (BMI) scale which shows weight categories from the Centers for Disease Control and Prevention: Obese, Overweight, Normal, Underweight. Ex. B at 1 (citing Exhibit 2, ECF No. 46-2 at 8). Dr. Maier notes that, according to that scale which is widely accepted in the medical community, an "adult male of 5 feet 10 inches and 132 pounds has a body mass index a BMI of 18.9 is "considered to be within the normal or healthy weight category." *Id.* "A BMI of 18.5 and below for any adult of any sex or age is in the underweight category." *Id.*

Attached to Dr. Maier's affidavit are copies of Mr. Thompson's medical records as pertinent to this litigation. Ex. B, Ex. 1 (ECF No. 46-2 at 3-7). On March 10, 2014, Mr. Thompson was given a housing evaluation before going to confinement. Ex. B, Ex. 1 ECF No. 46-2 at 3). His weight was 151 pounds. *Id.* On March 19th, it remained at 151. *Id.* at 4. On March 27th, his weight was down to 143 pounds and his BMI was noted to be 20.6. *Id.* at 5. The medical records confirm the 4,000 calorie

diet pass was issued on April 1, 2014.  *Id.*  Plaintiff had a doctors clinic appointment on April 16, 2014.  *Id.* at 6.  His weight was down to 138 pounds and his BMI was 19.8.  The final page of the medical record submitted shows that as of July 14, 2014, his weight was back up to 156 pounds.  *Id.* at 7.

**Analysis**

The Eighth Amendment[5] governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The United States Constitution does not require "comfortable prisons" with all the amenities, but it requires that prisons not be "inhumane."  Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003) (citing Farmer, 511 U.S. at 832, 114 S.Ct. at 1976).  The Eighth Amendment specifically prohibits cruel and unusual punishment, Farrow, 320 F.3d at 1242-43 (citing Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct.

---

[5] "In the prison context, three distinct Eighth Amendment claims are available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation."  Thomas v. Bryant, 614 F.3d 1288, 1303-04 (11th Cir. 2010).  This case raises a claim to the conditions of confinement, but does not assert either an excessive force claim or a deliberate indifference to medical needs claim.

2475, 2480, 125 L.Ed.2d 22 (1993), and conditions that "involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).  "Where, as here, the claim is based upon the deprivation of food, such a claim can only constitute cruel and unusual punishment if the prisoner is denied 'minimal civilized measure of life's necessities.'" Wilson v.Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoted in Ruiz v. Furnham, No. 4:10-CV-00275-MP-GRJ, 2010 WL 5289003, at *2 (N.D. Fla. Dec. 16, 2010)).

A two-part analysis governs Eighth Amendment challenges to conditions of confinement. Chandler, 379 F.3d at 1289.  "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (cited in Chandler, 379 F.3d at 1289).

> The challenged condition must be "extreme." *Id.,* at 9, 112 S.Ct. at 1000.  While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an

> unreasonable risk of serious damage to his future health" or safety, *id.,* at 35, 113 S.Ct. at 2481.  Moreover,  the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.  *Id.,* at 36, 113 S.Ct. at 2482.

Chandler, 379 F.3d at 1289.  The second part of the analysis requires prisoners to show that prison officials "acted with a sufficiently culpable state of mind" regarding the condition at issue.  Hudson, 503 U.S. at 8, 112 S.Ct. at 999 (marks and citation omitted); 379 F.3d at 1289.  "The proper standard is that of deliberate indifference."  Chandler, 379 F.3d at 1289 (citing Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991)).

"[I]nmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"  Ruiz, 2010 WL 5289003, at *2 (quoting Shrader v. White, 761 F.2d 975 (4th Cir. 1985) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*,

450 U.S. 1041 (1981)) and citing French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)). While prison food need not be "tasty or aesthetically pleasing," it must be "adequate to maintain health." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.1993) (finding inmate's allegations about the use of Nutraloaf did not "rise to the threshold level of a deprivation that satisfies *Wilson's* objective component") (citing Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977)).  "Federal courts '[c]annot be concerned with a prison menu to which prisoners believe they are entitled.  These involve matters of internal prison administration.'" Tunnel v. Robinson, 486 F.Supp. 1265, 1269 (W.D. Pa. 1980) (quoted in Ruiz, 2010 WL 5289003, at *2).

In considering these guiding principles and evaluating Mr. Thompson's claims on this record, it cannot be said that he has shown a genuine dispute of a material fact such that Defendants' summary judgment motion should be denied.  Here, there is no evidence that Mr. Thompson was singled out and provided deficient meals as punishment.  His deposition testimony establishes that the meal trays served to all inmates in confinement contained smaller portions.  *See* ECF No. 46-1 at 15-16.  His testimony reveals that the same issues with "old"

food or objects in the food were experienced by other inmates, not just Mr. Thompson.  *Id.* at 18-20.  He was served three meals a day, every day, and could eat the majority of food on his tray.  More importantly, when Mr. Thompson reported his weight loss, his issue was not ignored.  He was provided additional food to increase his caloric intake.  Although he complains about the delay in receiving the additional food, the 9 or 10 days it took to receive extra food was not an "extreme deprivation."  There is no evidence to support either the objective factor or the subjective factor.

      The evidence further reveals that this was not an isolated incidence because Mr. Thompson's affidavit declares that he suffered weight loss issues on four occasions.  He explained in his deposition that one such incident occurred before he ever entered the custody of the Florida Department of Corrections.  Mr. Thompson did not suggest that the problems in Pasco County were due to anything more than his high metabolism.  His needs for additional calories were met by the Department.  Summary judgment should be granted in favor of Mr. Collette and Mr. Duval.  Because the Eighth Amendment claim is insufficient, there is no need to address the additional arguments raised by Defendants in the motion for summary judgment.

**Recommendation**

It is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 46, be **GRANTED** and judgment entered in their favor.

**IN CHAMBERS** at Tallahassee, Florida, on January 30, 2017.

  S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**